IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

Alexandria Division

FILED
IN OPEN COURT

JAN 1 0 2024

CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

UNITED STATES OF AMERICA            )
                                    )
            v.                      )        Case No. 1:23-CR-202
                                    )
SAP SE                              )        Hon. Rossie D. Alston, Jr.
                                    )
            Defendant               )

## DEFERRED PROSECUTION AGREEMENT

Defendant SAP SE (the "Company"), pursuant to authority granted by the Company's Board of Directors reflected in Attachment B, the United States Department of Justice, Criminal Division, Fraud Section (the "Fraud Section"), and the United States Attorney's Office for the Eastern District of Virginia (the "Office") (collectively, the "Fraud Section and the Office") enter into this deferred prosecution agreement (the "Agreement"). The terms and conditions of this Agreement are as follows:

### Criminal Information and Acceptance of Responsibility

1.      The Company acknowledges and agrees that the Fraud Section and the Office will file the attached two-count criminal Information in the United States District Court for the Eastern District of Virginia charging the Company with two counts of conspiracy to commit an offense against the United States, in violation of Title 18, United States Code, Section 371, that is, to violate the anti-bribery provisions of the Foreign Corrupt Practices Act of 1977 ("FCPA"), as amended, Title 15, United States Code, Sections 78dd-1 and 78m. In so doing, the Company: (a) knowingly waives any right it may have to indictment on these charges, as well as all rights to a speedy trial pursuant to the Sixth Amendment to the United States Constitution, Title 18, United

States Code, Section 3161, and Federal Rule of Criminal Procedure 48(b); (b) knowingly waives any objection with respect to venue to any charges by the United States arising out of the conduct described in the Statement of Facts attached hereto as Attachment A ("Statement of Facts") and consents to the filing of the Information, as provided under the terms of this Agreement, in the United States District Court for the Eastern District of Virginia; and (c) agrees that the charges in the Information and any charges arising from the conduct described in the Statement of Facts are not time-barred by the applicable statute of limitations on the date of the signing of this Agreement. The Fraud Section and the Office agree to defer prosecution of the Company pursuant to the terms and conditions described below.

2.      The Company admits, accepts, and acknowledges that it is responsible under United States law for the acts of its officers, directors, employees, and agents as charged in the Information, and as set forth in the Statement of Facts, and that the allegations described in the Information and the facts described in the Statement of Facts are true and accurate. The Company agrees that, effective as of the date the Company signs this Agreement, in any prosecution that is deferred by this Agreement, it will not dispute the Statement of Facts set forth in this Agreement, and, in any such prosecution, the Statement of Facts shall be admissible as: (a) substantive evidence offered by the government in its case-in-chief and rebuttal case; (b) impeachment evidence offered by the government on cross-examination; and (c) evidence at any sentencing hearing or other hearing. In addition, in connection therewith, the Company agrees not to assert any claim under the United States Constitution, Rule 410 of the Federal Rules of Evidence, Rule 11(f) of the Federal Rules of Criminal Procedure, Section 1B1.1(a) of the United States Sentencing

2

Guidelines, or any other federal rule that the Statement of Facts should be suppressed or is otherwise inadmissible as evidence in any form.

### Term of the Agreement

3.      This Agreement is effective for a period beginning on the date on which the Information is filed and ending three years from that date (the "Term").  The Company agrees, however, that, in the event the Fraud Section and the Office determine, in their sole discretion, that the Company has knowingly violated any provision of this Agreement or has failed to completely perform or fulfill each of the Company's obligations under this Agreement, an extension or extensions of the Term may be imposed by the Fraud Section and the Office, in their sole discretion, for up to a total additional time period of one year, without prejudice to the Fraud Section's and the Office's right to proceed as provided in Paragraphs 18 to 22 below.  Any extension of the Agreement extends all terms of this Agreement, including the terms of the reporting requirement in Attachment D, for an equivalent period.  Conversely, in the event the Fraud Section and the Office find, in their sole discretion, that there exists a change in circumstances sufficient to eliminate the need for the reporting requirement in Attachment D, and that the other provisions of this Agreement have been satisfied, the Agreement may be terminated early.

### Relevant Considerations

4.      The Fraud Section and the Office enter into this Agreement based on the individual facts and circumstances presented by this case and the Company, including:

           a.       the nature and seriousness of the offense conduct, as described in the Statement of Facts, including multi-year schemes to pay bribes benefitting South African and

3

Indonesian officials in order to obtain and retain contracts, and associated falsification of the Company's books and records regarding payments to third-party intermediaries in South Africa, all of which resulted in profits of approximately $103,396,765 to the Company;

        b.     the Company did not receive voluntary disclosure credit pursuant to the Criminal Division's Corporate Enforcement and Voluntary Self-Disclosure Policy, or pursuant to U.S. Sentencing Guidelines ("U.S.S.G." or "Sentencing Guidelines") § 8C2.5(g)(1), because it did not voluntarily and timely disclose to the Fraud Section and the Office the conduct described in the Statement of Facts;

        c.     the Company received credit for its cooperation with the Fraud Section and the Office's investigation pursuant to U.S.S.G. § 8C2.5(g)(2) because it cooperated with their investigation and demonstrated recognition and affirmative acceptance of responsibility for its criminal conduct; the Company also received credit for its substantial cooperation and timely remediation pursuant to the Criminal Division's Corporate Enforcement and Voluntary Self-Disclosure Policy. The Company's cooperation included, among other things, (i) immediately beginning to cooperate after South African investigative reports made public allegations of the South Africa-related misconduct in 2017 and providing regular, prompt, and detailed updates to the Fraud Section and the Office regarding factual information obtained through its own internal investigation, which allowed the government to preserve and obtain evidence as part of its independent investigation; (ii) producing relevant documents and other information to the Fraud Section and the Office from multiple foreign countries expeditiously, while navigating foreign data privacy and related laws; (iii) at the request of the Fraud Section and the Office, voluntarily making Company officers and employees available for interviews; (iv) taking significant

4

affirmative steps to facilitate interviews while addressing witness security concerns; (v) raising and resolving potential deconfliction issues between the Company's internal investigation and the investigation being conducted by the Fraud Section and the Office; (vi) promptly collecting, analyzing, and organizing voluminous information, including complex financial information, at the request of the Fraud Section and the Office; (vii) translating voluminous foreign language documents to facilitate and expedite review by the Fraud Section and the Office; and (viii) imaging the phones of relevant custodians at the beginning of the Company's internal investigation, thus preserving relevant and highly probative business communications sent on mobile messaging applications;

        d.    the Company provided to the Fraud Section and the Office all relevant facts known to it, including information about the individuals involved in the conduct described in the attached Statement of Facts and conduct disclosed to the Fraud Section and the Office prior to the Agreement;

        e.    the Company also received credit pursuant to the Criminal Division Corporate Enforcement and Voluntary Self-Disclosure Policy because it engaged in timely remedial measures, including: (i) conducting an analysis of the root causes of the underlying conduct and gap analysis, and undertaking appropriate remediation to address those root causes and enhance its compliance program and related controls; (ii) undertaking a comprehensive risk assessment focusing on high risk areas and controls around payment processes and enhancing its regular compliance risk assessment process, including by incorporating comprehensive operational and compliance data into its risk assessments; (iii) eliminating its third-party sales commission model globally, and prohibiting all sales commissions for public sector contracts in

high-risk markets; (iv) significantly increasing the budget, resources, and expertise devoted to compliance and restructuring its Offices of Ethics and Compliance to ensure adequate stature, independence, autonomy, and access to executive leadership; (v) enhancing its code of conduct and policies and procedures regarding gifts, hospitality, and the use of third parties; (vi) enhancing its reporting, investigations and consequence management processes; (vii) adjusting compensation incentives to align with compliance objectives and reduce corruption risk; (viii) enhancing and expanding compliance monitoring and audit programs, planning, and resources, including developing a well-resourced team devoted to audits of third-party partners and suppliers; (ix) expanding its data analytics capabilities to cover over 150 countries, including all high-risk countries globally; and (x) promptly disciplining any and all employees involved in the misconduct.

f.     the Company withheld bonuses totaling $109,141 during the course of its internal investigation from employees who engaged in suspected wrongdoing in connection with the conduct under investigation, or who both (a) had supervisory authority over the employee(s) or business area engaged in the misconduct and (b) knew of, or were willfully blind to, the misconduct, and further engaged in substantial litigation to defend its withholding from those employees, qualifying the Company for an additional fine reduction in the amount of the withheld bonuses under the Criminal Division's March 2023 Compensation Incentives and Clawbacks Pilot Program ("Pilot Program");

g.     the Company has enhanced and has committed to continuing to enhance its compliance program and internal controls, including ensuring that its compliance program satisfies

6

the minimum elements set forth in Attachment C to this Agreement (Corporate Compliance Program);

        h.     based on the Company's remediation and the state of its compliance program, and the Company's agreement to report to the Fraud Section and the Office as set forth in Attachment D to this Agreement (Compliance Reporting Requirements), the Fraud Section and the Office determined that an independent compliance monitor was unnecessary;

        i.     the Company has had prior criminal and civil resolutions with authorities in the United States and elsewhere, including, as relevant here, a non-prosecution agreement in 2021 with the Department's National Security Division, as well as administrative agreements with the Departments of Commerce and Treasury, following the Company's voluntary self-disclosure of potential export law violations; the Company also entered into a resolution in 2016 with the Securities and Exchange Commission ("SEC") concerning alleged FCPA violations in Panama;

        j.     the Company's agreement to resolve concurrently a separate investigation by the SEC relating, in part, to the conduct described in the Statement of Facts and its agreement to pay $85,046,035 in disgorgement; and the Company's anticipated resolution with authorities in South Africa relating to the South Africa portion of the conduct described in the Statement of Facts, which resolutions the Fraud Section and the Office are crediting in connection with the criminal penalty and disgorgement specified in this Agreement;

        k.     the Company has agreed to continue to cooperate with the Fraud Section and the Office in any ongoing investigation as described in Paragraph 5 below; and

        l.     accordingly, after considering (a) through (k) above, the Fraud Section and the Office have determined that the appropriate resolution in this case is a deferred prosecution

agreement and a criminal penalty of $118,800,000, which reflects a discount of 40 percent off the tenth percentile of the otherwise-applicable Sentencing Guidelines fine range, taking into account the Company's cooperation and remediation, as well as its prior history, pursuant to the Corporate Enforcement and Voluntary Self-Disclosure Policy; and disgorgement in the amount of $103,396,765.

<b><u>Ongoing Cooperation and Disclosure Requirements</u></b>

5.      The Company shall cooperate fully with the Fraud Section and the Office in any and all matters relating to the conduct described in this Agreement and the attached Statement of Facts and other conduct under investigation by the Fraud Section and the Office at any time during the Term until the later of the date upon which all investigations and prosecutions arising out of such conduct are concluded, or the end of the Term.  At the request of the Fraud Section and the Office, the Company shall also cooperate fully with other domestic or foreign law enforcement and regulatory authorities and agencies, as well as the Multilateral Development Banks ("MDBs"), in any investigation of the Company, its affiliates, or any of its present or former officers, directors, employees, agents, and consultants, or any other party, in any and all matters relating to the conduct described in this Agreement and the attached Statement of Facts and other conduct under investigation by the Fraud Section and the Office.  The Company's cooperation pursuant to this Paragraph is subject to applicable law and regulations, including data privacy and national security laws, as well as valid claims of attorney-client privilege or attorney work product doctrine; however, the Company must provide to the Fraud Section and the Office a log of any information or cooperation that is not provided based on an assertion of law, regulation, or privilege, and the Company bears the burden of establishing the validity of any such an assertion.  The Company

agrees that its cooperation pursuant to this paragraph shall include, but not be limited to, the following:

a.  The Company represents that it has timely and truthfully disclosed all factual information with respect to its activities, those of its subsidiaries and affiliates, and those of its present and former directors, officers, employees, agents, and consultants relating to the conduct described in this Agreement and the attached Statement of Facts, as well as any other conduct under investigation by the Fraud Section and the Office at any time about which the Company has any knowledge.  The Company further agrees that it shall promptly and truthfully disclose all factual information with respect to its activities, those of its subsidiaries and affiliates, and those of its present and former directors, officers, employees, agents, and consultants about which the Company shall gain any knowledge or about which the Fraud Section and the Office may inquire.  This obligation of truthful disclosure includes, but is not limited to, the obligation of the Company to provide to the Fraud Section and the Office, upon request, any document, record, or other tangible evidence about which the Fraud Section and the Office may inquire of the Company including evidence that is responsive to any requests made prior to the execution of this Agreement.

b.  Upon request of the Fraud Section and the Office, the Company shall designate knowledgeable employees, agents, or attorneys to provide to the Fraud Section and the Office the information and materials described in Paragraph 5(a) above on behalf of the Company. It is further understood that the Company must at all times provide complete, truthful, and accurate information.

c.      The Company shall use its best efforts to make available for interviews or testimony, as requested by the Fraud Section and the Office, present or former officers, directors, employees, agents, and consultants of the Company.  This obligation includes, but is not limited to, sworn testimony before a federal grand jury or in federal trials, as well as interviews with domestic or foreign law enforcement and regulatory authorities.  Cooperation under this Paragraph shall include identification of witnesses who, to the knowledge of the Company, may have material information regarding the matters under investigation.

d.      With respect to any information, testimony, documents, records, or other tangible evidence provided to the Fraud Section and the Office pursuant to this Agreement, the Company consents to any and all disclosures, subject to applicable laws and regulations, to other governmental authorities, including United States authorities and those of a foreign government, as well as the MDBs, of such materials as the Fraud Section and the Office, in its sole discretion, shall deem appropriate.

6.      In addition to the obligations in Paragraph 5, during the Term, should the Company learn of any evidence or allegation of conduct that may constitute a violation of the FCPA anti-bribery or accounting provisions had the conduct occurred within the jurisdiction of the United States, the Company shall promptly report such evidence or allegation to the Fraud Section and the Office.

**<u>Payment of Monetary Penalty</u>**

7.      The Fraud Section and the Office and the Company agree that application of the United States Sentencing Guidelines to determine the applicable fine range yields the following analysis:

10

a.   The November 1, 2023 U.S.S.G. are applicable to this matter.

b.   <u>Offense Level</u>. Based upon U.S.S.G. § 2C1.1, the total offense level is 42, calculated as follows:

| | |
|---|---|
| § 2C1.1(a)(2)  Base Offense Level | 12 |
| § 2C1.1(b)(1)  More than One Bribe | +2 |
| §§ 2C1.1(b)(2), 2B1.1(b)(1)(M)<br>Benefit (More than $ 65,000,000) | +24 |
| §2C1.1(b)(3)  Involvement of High-Level Public Official | +4 |
| **TOTAL** | **42** |

c.   <u>Base Fine</u>  Based upon U.S.S.G. § 8C2.4(d), the base fine is $150,000,000.

d.   <u>Culpability Score</u>. Based upon U.S.S.G. § 8C2.5, the culpability score is 6, calculated as follows:

| | |
|---|---|
| § 8C2.5(a)     Base Culpability Score | 5 |
| § 8C2.5(b)(3)(B)(i)   Unit had 200 or more employees<br>and High-Level Personnel | +3 |
| § 8C2.5(g)(2)  Cooperation, Acceptance | - 2 |
| **TOTAL** | **6** |

<u>Calculation of Fine Range</u>:

| | |
|---|---|
| Base Fine | $150,000,000 |
| Multipliers | 1.2 (min) / 2.4 (max) |
| Fine Range | $180,000,000 / $360,000,000 |

8.   The Fraud Section and the Office and the Company agree, based on the application of the Sentencing Guidelines, that the appropriate criminal penalty is $118,800,000 (the "Criminal

Penalty"). This reflects a 40 percent discount off the 10th percentile of the Sentencing Guidelines fine range.

9.    The Company and the Fraud Section and the Office agree that the Company will pay a monetary penalty in the amount of $63,590,859, equal to approximately fifty-four percent of the Criminal Penalty ($63,700,000), reduced by $109,141 under the Criminal Division's Pilot Program Regarding Compensation Incentives and Clawbacks, to the United States Treasury no later than ten business days after the Agreement is fully executed. The Fraud Section and the Office agree to credit toward the Criminal Penalty the amount paid by the Company to authorities in South Africa for violations of South African law related to the same conduct described in the Statement of Facts, up to a maximum of $55,100,000 (the "Penalty Credit Amount"), within twelve months of the execution of this Agreement. Should any amount of the Penalty Credit Amount not be paid within twelve months of the execution of this Agreement, or be returned to the Company or any affiliated entity for any reason, the remaining balance of the Penalty Credit Amount will be paid to the United States Treasury within twelve months of the execution of this Agreement. The Company and the Fraud Section and the Office agree that this penalty is appropriate given the facts and circumstances of this case, including the Relevant Considerations described in Paragraph 4 of this Agreement. The Criminal Penalty is final and shall not be refunded. Furthermore, nothing in this Agreement shall be deemed an agreement by the Fraud Section and the Office that the Criminal Penalty is the maximum penalty that may be imposed in any future prosecution, and the Fraud Section and the Office are not precluded from arguing in any future prosecution that the Court should impose a higher Criminal Penalty, although the Fraud Section and the Office agree that under those circumstances, it will recommend to the Court that any amount paid under this Agreement should be offset against any penalty or fine the Court imposes as part of a future

judgment. The Company acknowledges that no tax deduction may be sought in connection with the payment of any part of the Criminal Penalty. The Company shall not seek or accept directly or indirectly reimbursement or indemnification from any source with regard to the Criminal Penalty or disgorgement amounts that the Company pays pursuant to this Agreement or any other agreement entered into with an enforcement authority or regulator concerning the facts set forth in the Statement of Facts.

### Forfeiture and Disgorgement

10.     As a result of the Company's conduct, including the conduct set forth in the attached Statement of Facts, the parties agree that the Fraud Section and the Office could institute a civil and/or criminal forfeiture action against certain funds held by the Company and that such funds would be forfeitable pursuant to Title 18, United States Code, Section 981(a)(1)(C) and 982(a)(2) and Title 28, United States Code, Section 2461(c). The Company hereby admits that the facts set forth in the Statement of Facts establish that at least $103,396,765, representing the proceeds traceable to the commission of the offense, is forfeitable to the United States (the "Forfeiture Amount"). The Company releases any and all claims it may have to the Forfeiture Amount, agrees that the forfeiture of such funds may be accomplished either administratively or judicially at the Fraud Section's and the Office's election, and waives the requirements of any applicable laws, rules or regulations governing the forfeiture of assets, including notice of the forfeiture. If the Fraud Section and the Office seek to forfeit the Forfeiture Amount judicially or administratively, the Company consents to entry of an order of forfeiture or declaration of forfeiture directed to such funds and waives any defense it may have under Title 18, United States Code, Sections 981-984, including but not limited to notice, statute of limitations, and venue. The Company agrees to sign any additional documents necessary to complete forfeiture of the

Forfeiture Amount. The Company also agrees that it shall not file any petitions for remission, restoration, or any other assertion of ownership or request for return relating to the Forfeiture Amount, or any other action or motion seeking to collaterally attach the seizure, restraint, forfeiture, or conveyance of the Forfeiture Amount, nor shall it assist any others in filing any such claims, petitions, actions, or motions.

11.     The Fraud Section and the Office agree to credit toward the Forfeiture Amount any proceeds traceable to the commission of the offense that are disgorged by the Company to the SEC and South African authorities, including repayments to customers of any of the transactions listed in the Statement of Facts, up to a maximum amount of $103,396,765 (the "Forfeiture Credit Amount"). Should any amount of the Forfeiture Credit Amount not be paid to the SEC and South African authorities and in connection with the Company's resolutions with those authorities within twelve months of the execution of this Agreement, the Company agrees that it shall make a payment of any remaining unpaid portion of the Forfeiture Credit Amount by wire transfer pursuant to instructions provided by the Fraud Section and the Office no later than 10 business days after one year from the date of the Agreement.

12.     Any portion of the Disgorgement Amount that is paid is final and shall not be refunded should the Fraud Section and the Office later determine that the Company has breached this Agreement and commence a prosecution against the Company. In the event of a breach of this Agreement and subsequent prosecution, the Fraud Section and the Office are not limited to the Disgorgement Amount. The Fraud Section and the Office agree that in the event of a subsequent breach and prosecution, they will recommend to the Court that the amounts paid pursuant to this Agreement be offset against whatever forfeiture the Court shall impose as part of

its judgment. The Company understands that such a recommendation will not be binding on the Court.

### Conditional Release from Liability

13.     Subject to Paragraphs 18 to 22, the Fraud Section and the Office agree, except as provided in this Agreement, that they will not bring any criminal or civil case against the Company relating to any of the conduct described in the Statement of Facts or the criminal Information filed pursuant to this Agreement. The Fraud Section and the Office, however, may use any information related to the conduct described in the Statement of Facts against the Company: (a) in a prosecution for perjury or obstruction of justice; (b) in a prosecution for making a false statement; (c) in a prosecution or other proceeding relating to any crime of violence; or (d) in a prosecution or other proceeding relating to a violation of any provision of Title 26 of the United States Code.

   a.     This Agreement does not provide any protection against prosecution for any future conduct by the Company.

   b.     In addition, this Agreement does not provide any protection against prosecution of any individuals, regardless of their affiliation with the Company or any of its affiliates or subsidiaries.

### Corporate Compliance Program

14.     The Company represents that it has implemented and will continue to implement a compliance and ethics program designed to prevent and detect violations of the FCPA and other applicable anti-corruption laws throughout its operations, including those of its affiliates, agents, and joint ventures, and those of its contractors and subcontractors whose responsibilities include interacting with foreign officials or other activities carrying a high risk of corruption, including, but not limited to, the minimum elements set forth in Attachment C.

15

15.     In order to address any deficiencies in its internal accounting controls, policies, and procedures, the Company represents that it has undertaken, and will continue to undertake in the future, in a manner consistent with all of its obligations under this Agreement, a review of its existing internal accounting controls, policies, and procedures regarding compliance with the FCPA and other applicable anti-corruption laws.  Where necessary and appropriate, the Company agrees to adopt a new compliance program, or to modify its existing one, including internal controls, compliance policies, and procedures in order to ensure that it maintains: (a) an effective system of internal accounting controls designed to ensure the making and keeping of fair and accurate books, records, and accounts; and (b) a rigorous anti-corruption compliance program that incorporates relevant internal accounting controls, as well as policies and procedures designed to effectively detect and deter violations the FCPA and other applicable anti-corruption laws.  The compliance program, including the internal accounting controls system will include, but not be limited to, the minimum elements set forth in Attachment C.

### Corporate Compliance Reporting

16.     The Company agrees that it will report to the Fraud Section and the Office annually during the Term regarding remediation and implementation of the compliance measures described in Attachment C.  These reports will be prepared in accordance with Attachment D.

17.     Thirty days prior to the expiration of the Term, the Company, by the Chief Executive Officer and Group Chief Compliance Officer, will certify to the Fraud Section and the Office, in the form of executing the document attached as Attachment F to this Agreement, that the Company has met its compliance obligations pursuant to this Agreement.  Each certification will be deemed a material statement and representation by the Company to the executive branch

16

of the United States for purposes of Title 18, United States Code, Sections 1001 and 1519, and it will be deemed to have been made in the judicial district in which this Agreement is filed.

### Deferred Prosecution

18.     In consideration of the undertakings agreed to by the Company herein, the Fraud Section and the Office agree that any prosecution of the Company for the conduct set forth in the Statement of Facts be and hereby is deferred for the Term.  To the extent there is conduct disclosed by the Company that is not set forth in the Statement of Facts, such conduct will not be exempt from further prosecution and is not within the scope of or relevant to this Agreement.

19.     The Fraud Section and the Office further agree that if the Company fully complies with all of its obligations under this Agreement, the Fraud Section and the Office will not continue the criminal prosecution against the Company described in Paragraph 1 and, at the conclusion of the Term, this Agreement shall expire.  Within six months after the Agreement's expiration, the Fraud Section and the Office shall seek dismissal with prejudice of the criminal Information filed against the Company described in Paragraph 1 and agree not to file charges in the future against the Company based on the conduct described in this Agreement and the Statement of Facts.  If, however, the Fraud Section and the Office determine during this six-month period that the Company breached the Agreement during the Term, as described in Paragraph 20, the Fraud Section's and the Office's ability to extend the Term, as described in Paragraph 3, or to pursue other remedies, including those described in Paragraphs 20 to 24, remains in full effect.

### Breach of the Agreement

20.     If, during the Term, the Company (a) commits any felony under U.S. federal law; (b) provides in connection with this Agreement deliberately false, incomplete, or misleading information, including in connection with its disclosure of information about individual

17

culpability; (c) fails to cooperate as set forth in Paragraphs 5 and 6 of this Agreement; (d) fails to implement a compliance program and report to the Fraud Section and the Office as set forth in Paragraphs 14 through 17 of this Agreement and Attachment C and D; (e) commits any acts that, had they occurred within the jurisdictional reach of the FCPA, would be a violation of the FCPA; or (f) otherwise fails to completely perform or fulfill each of the Company's obligations under the Agreement, regardless of whether the Fraud Section and the Office become aware of such a breach after the Term is complete, the Company shall thereafter be subject to prosecution for any federal criminal violation of which the Fraud Section and the Office have knowledge, including, but not limited to, the charges in the Information described in Paragraph 1, which may be pursued by the Fraud Section and the Office in the U.S. District Court for the Eastern District of Virginia or any other appropriate venue.  Determination of whether the Company has breached the Agreement and whether to pursue prosecution of the Company shall be in the Fraud Section's and the Office's sole discretion.  Any such prosecution may be premised on information provided by the Company or its personnel.  Any such prosecution relating to the conduct described in the Statement of Facts or relating to conduct known to the Fraud Section and the Office prior to the date on which this Agreement was signed that is not time-barred by the applicable statute of limitations on the date of the signing of this Agreement may be commenced against the Company, notwithstanding the expiration of the statute of limitations, between the signing of this Agreement and the expiration of the Term plus one year.  Thus, by signing this Agreement, the Company agrees that the statute of limitations with respect to any such prosecution that is not time-barred on the date of the signing of this Agreement shall be tolled for the Term plus one year.  In addition, the Company agrees that the statute of limitations as to any violation of federal law that occurs during the Term will be tolled from the date upon which the violation occurs until the earlier of the date upon which the

18

Fraud Section and the Office are made aware of the violation or the duration of the Term plus five years, and that this period shall be excluded from any calculation of time for purposes of the application of the statute of limitations.

21.     In the event the Fraud Section and the Office determine that the Company has breached this Agreement, the Fraud Section and the Office agree to provide the Company with written notice of such breach prior to instituting any prosecution resulting from such breach. Within thirty days of receipt of such notice, the Company shall have the opportunity to respond to the Fraud Section and the Office in writing to explain the nature and circumstances of such breach, as well as the actions the Company has taken to address and remediate the situation, which explanation the Fraud Section and the Office shall consider in determining whether to pursue prosecution of the Company.

22.     In the event that the Fraud Section and the Office determine that the Company has breached this Agreement:  (a) all statements made by or on behalf of the Company to the Fraud Section and the Office or to the Court, including the Statement of Facts, and any testimony given by the Company before a grand jury, a court, or any tribunal, or at any legislative hearings, whether prior or subsequent to this Agreement, and any leads derived from such statements or testimony, shall be admissible in evidence in any and all criminal proceedings brought by the Fraud Section and the Office against the Company; and (b) the Company shall not assert any claim under the United States Constitution, Rule 11(f) of the Federal Rules of Criminal Procedure, Rule 410 of the Federal Rules of Evidence, or any other federal rule that any such statements or testimony made by or on behalf of the Company prior or subsequent to this Agreement, or any leads derived therefrom, should be suppressed or are otherwise inadmissible.  The decision whether conduct or statements of any current director, officer or employee, or any person acting on behalf of, or at the

19

direction of, the Company, will be imputed to the Company for the purpose of determining whether the Company has violated any provision of this Agreement shall be in the sole discretion of the Fraud Section and the Office.

23.     The Company acknowledges that the Fraud Section and the Office have made no representations, assurances, or promises concerning what sentence may be imposed by the Court if the Company breaches this Agreement and this matter proceeds to judgment.  The Company further acknowledges that any such sentence is solely within the discretion of the Court and that nothing in this Agreement binds or restricts the Court in the exercise of such discretion.

24.     On the date that the period of deferred prosecution specified in this Agreement expires, the Company, by the Chief Executive Officer of the Company and the Chief Financial Officer of the Company, will certify to the Fraud Section and the Office in the form of executing the document attached as Attachment E to this Agreement that the Company has met its disclosure obligations pursuant to Paragraph 6 of this Agreement.  Each certification will be deemed a material statement and representation by the Company to the executive branch of the United States for purposes of 18 U.S.C. §§ 1001 and 1519, and it will be deemed to have been made in the judicial district in which this Agreement is filed.

**Sale, Merger, or Other Change in Corporate Form of Company**

25.     Except as may otherwise be agreed by the parties in connection with a particular transaction, the Company agrees that in the event that, during the Term, it undertakes any change in corporate form, including if it sells, merges, or transfers business operations that are material to the Company's consolidated operations, or to the operations of any subsidiaries or affiliates involved in the conduct described in the Statement of Facts, as they exist as of the date of this Agreement, whether such sale is structured as a sale, asset sale, merger, transfer, or other change

20

in corporate form, it shall include in any contract for sale, merger, transfer, or other change in corporate form a provision binding the purchaser, or any successor in interest thereto, to the obligations described in this Agreement.  The purchaser or successor in interest must also agree in writing that the Fraud Section's and the Office's ability to determine a breach under this Agreement is applicable in full force to that entity.  The Company agrees that the failure to include these provisions in the transaction will make any such transaction null and void.  The Company shall provide notice to the Fraud Section and the Office at least thirty days prior to undertaking any such sale, merger, transfer, or other change in corporate form.  The Fraud Section and the Office shall notify the Company prior to such transaction (or series of transactions) if they determine that the transaction or transactions will have the effect of circumventing or frustrating the enforcement purposes of this Agreement.  If at any time during the Term the Company engages in a transaction (or series of transactions) that has the effect of circumventing or frustrating the enforcement purposes of this Agreement, the Fraud Section and the Office may deem it a breach of this Agreement pursuant to Paragraphs 20-24 of this Agreement.  Nothing herein shall restrict the Company from indemnifying (or otherwise holding harmless) the purchaser or successor in interest for penalties or other costs arising from any conduct that may have occurred prior to the date of the transaction, so long as such indemnification does not have the effect of circumventing or frustrating the enforcement purposes of this Agreement, as determined by the Fraud Section and the Office.

## **Public Statements**

26.      The Company expressly agrees that it shall not, through present or future attorneys, officers, directors, employees, agents, or any other person authorized to speak for the Company make any public statement, in litigation or otherwise, contradicting the acceptance of responsibility

by the Company set forth above or the facts described in the Statement of Facts.  Any such contradictory statement shall, subject to cure rights of the Company described below, constitute a breach of this Agreement, and the Company thereafter shall be subject to prosecution as set forth in Paragraphs 20 to 24 of this Agreement.  The decision whether any public statement by any such person contradicting a fact contained in the Statement of Facts will be imputed to the Company for the purpose of determining whether it has breached this Agreement shall be at the sole discretion of the Fraud Section and the Office.  If the Fraud Section and the Office determine that a public statement by any such person contradicts in whole or in part a statement contained in the attached Statement of Facts, the Fraud Section and the Office shall so notify the Company, and the Company may avoid a breach of this Agreement by publicly repudiating such statement(s) within five business days after notification.  The Company shall be permitted to raise defenses and to assert affirmative claims in other proceedings relating to the matters set forth in the Statement of Facts provided that such defenses and claims do not contradict, in whole or in part, a statement contained in the attached Statement of Facts.  This Paragraph does not apply to any statement made by any present or former officer, director, employee, or agent of the Company in the course of any criminal, regulatory, or civil case initiated against such individual, unless such individual is speaking on behalf of the Company.

27.     The Company agrees that if it, or any of its direct or indirect subsidiaries or affiliates issues a press release or holds any press conference in connection with this Agreement, the Company shall first consult with the Fraud Section and the Office to determine (a) whether the text of the release or proposed statements at the press conference are true and accurate with respect to matters between the Fraud Section and the Office and the Company; and (b) whether the Fraud Section and the Office have any objection to the release.

22

28.    The Fraud Section and the Office agree, if requested to do so, to bring to the attention of law enforcement and regulatory authorities the facts and circumstances relating to the nature of the conduct underlying this Agreement, including the nature and quality of the Company's cooperation and remediation.  By agreeing to provide this information to such authorities, the Fraud Section and the Office are not agreeing to advocate on behalf of the Company, but rather is agreeing to provide facts to be evaluated independently by such authorities.

### Limitations on Binding Effect of Agreement

29.    This Agreement is binding on the Company and the Fraud Section and the Office but specifically does not bind any other component of the Department of Justice, other federal agencies, or any state, local or foreign law enforcement or regulatory agencies, or any other authorities, although the Fraud Section and the Office will bring the cooperation of the Company and its compliance with its other obligations under this Agreement to the attention of such agencies and authorities if requested to do so by the Company.  If the court refuses to grant exclusion of time under the Speedy Trial Act, 18 U.S.C. § 3161(h)(2), all the provisions of this Agreement shall be deemed null and void, and the Term shall be deemed to have not begun, except that the statute of limitations for any prosecution relating to the conduct described in the Statement of Facts shall be tolled from the date on which this Agreement is signed until the date the Court refuses to grant the exclusion of time plus six months, and except for the provisions contained within Paragraph 2 of this Agreement.

## Notice

30.     Any notice to the Fraud Section and the Office under this Agreement shall be given by electronic mail and/or personal delivery, overnight delivery by a recognized delivery service, or registered or certified mail, addressed to Chief, FCPA Unit, Fraud Section, Criminal Division, U.S. Department of Justice, 1400 New York Avenue NW, Washington, DC 20005, and Chief, Financial Crimes and Public Corruption Unit, United States Attorney's Office for the Eastern District of Virginia, 2100 Jamieson Avenue, Alexandria, VA 22314.  Any notice to the Company under this Agreement shall be given by electronic mail and/or personal delivery, overnight delivery by a recognized delivery service, or registered or certified mail, addressed to Kwame J. Manley of Paul Hastings LLP, 2050 M Street NW, Washington, DC 20036.  Notice shall be effective upon actual receipt by the Fraud Section and the Office or the Company.

## Complete Agreement

31.     This Agreement, including its attachments, sets forth all the terms of the agreement between the Company and the Fraud Section and the Office.  No amendments, modifications, or additions to this Agreement shall be valid unless they are in writing and signed by the Fraud Section and the Office, the attorneys for the Company, and a duly authorized representative of the Company.

**AGREED**:

**SAP SE**:

Date: Jan. 9, 2024

By: _____
Christian Klein
Chief Executive Officer
SAP SE

Date: 1/10/2024

By: _____
Vivianne Gordon-Pullar
Group Chief Compliance Officer
SAP SE

Date: 1/10/2024

By: _____
Kwame J. Manley
Robert D. Luskin
Jason A. Fiebig
Paul Hastings LLP
Counsel to SAP SE

**FOR THE DEPARTMENT OF JUSTICE**:

GLENN S. LEON
Chief, Fraud Section
Criminal Division
United States Department of Justice

Date: 1/10/2024

BY: _____
William E. Schurmann, Trial Attorney
Anthony Scarpelli, Trial Attorney
Gwendolyn A. Stamper, Trial Attorney
Jonathan P. Robell, Assistant Chief

JESSICA D. ABER
United States Attorney
Eastern District of Virginia

Date: 1/10/2024

BY: _____
Heidi B. Gesch
Assistant United States Attorney

25