**ATTACHMENT B**

**CERTIFICATE OF CORPORATE RESOLUTIONS**

.    WHEREAS, SAP SE (the "Company") has been engaged in discussions with the United States Department of Justice, Criminal Division, Fraud Section (the "Fraud Section"), and the United States Attorney's Office for the Eastern District of Virginia (the "USAO-E.D. Va.") (collectively, the "Offices") regarding issues arising in relation to the Offices' investigation of violations of Title 18, United States Code, Section 371, Conspiracy, and Title 15, United States Code, Sections 78dd-1 and 78m, the Foreign Corrupt Practices Act by certain of the Company's employees and agents;

WHEREAS, in order to resolve such discussions, it is proposed that the Company enter into a certain agreement with the Offices (the "Agreement"); and

WHEREAS, the Company's Group Chief Compliance Officer, Vivianne Gordon-Pullar, together with outside counsel for the Company, have advised the Supervisory Board of the Company of its rights, possible defenses, the Sentencing Guidelines' provisions, and the consequences of entering into such Agreement with the Offices;

Therefore, the Supervisory Board has RESOLVED that:

1.    The Company: (a) acknowledges the filing of the two-count Information charging the Company with violating Title 18, United States Code, Section 371, and Title 15, United States Code, Sections 78dd-1 and 78m; (b) waives indictment on such charges and enters into the Agreement with the Offices; (c) agrees to accept a monetary penalty against Company totaling $118,000,000 and disgorgement totaling $103,396,765 under the Agreement with respect to the conduct described in the Information, and to pay such penalty and forfeiture to the United States Treasury with respect to the conduct described in the Information; and (d) admits the Court's

jurisdiction over the Company and the subject matter of such action and consents to the judgment therein;

2.      The Company accepts the terms and conditions of the Agreement, including, but not limited to: (a) a knowing waiver of its rights to a speedy trial pursuant to the Sixth Amendment to the United States Constitution, Title 18, United States Code, Section 3161, and Federal Rule of Criminal Procedure 48(b); (b) a knowing waiver for purposes of this Agreement and any charges by the United States arising out of the conduct described in the attached Statement of Facts of any objection with respect to venue and consents to the filing of the Information, as provided under the terms of the Agreement, in the United States District Court for the Eastern District of Virginia; and (c) a knowing waiver of any defenses based on the statute of limitations for any prosecution relating to the conduct described in the attached Statement of Facts or relating to conduct known to the Offices prior to the date on which the Agreement was signed that is not time-barred by the applicable statute of limitations on the date of the signing of the Agreement;

3.      The Company's Chief Executive Officer (Christian Klein) and Group Chief Compliance Officer (Vivianne Gordon-Pullar), are hereby authorized, empowered and directed, on behalf of the Company, to execute the Agreement substantially in such form as reviewed by this Supervisory Board at this meeting with such changes as the Group Chief Compliance Officer of the Company, Vivianne Gordon-Pullar, may approve;

4.      The Company's Chief Executive Officer (Christian Klein) and Group Chief Compliance Officer (Vivianne Gordon-Pullar) are hereby authorized, empowered and directed to take any and all actions as may be necessary or appropriate and to approve the forms, terms or provisions of any agreement or other documents as may be necessary or appropriate, to carry out and effectuate the purpose and intent of the foregoing resolutions; and

B-2

5.   All of the actions of any two of the Chief Executive Officer (Christian Klein), the Chief Financial Officer (Dominik Asam), and the Group Chief Compliance Officer (Vivianne Gordon-Pullar), which actions would have been authorized by the foregoing resolutions except that such actions were taken prior to the adoption of such resolutions, are hereby severally ratified, confirmed, approved, and adopted as actions on behalf of the Company.

Date: _Jan. 9, 2024_          By: _____

Christian Klein
SAP SE

Date: _Jan 10th, 2024_          By: _____

Vivianne Gordon-Pullar
SAP SE

B-3

**ATTACHMENT C**

**CORPORATE COMPLIANCE PROGRAM**

In order to address any deficiencies in its internal controls, compliance code, policies, and procedures regarding compliance with the Foreign Corrupt Practices Act ("FCPA"), 15 U.S.C. §§ 78dd-1, *et seq.*, and other applicable anti-corruption laws, SAP SE (the "Company") agrees to continue to conduct, in a manner consistent with all of its obligations under this Agreement, appropriate reviews of its existing internal controls, policies, and procedures.

Where necessary and appropriate, the Company agrees to modify its compliance program, including internal controls, compliance policies, and procedures in order to ensure that it maintains: (a) an effective system of internal accounting controls designed to ensure the making and keeping of fair and accurate books, records, and accounts; and (b) a rigorous anti-corruption compliance program that incorporates relevant internal accounting controls, as well as policies and procedures designed to effectively detect and deter violations of the FCPA and other applicable anti-corruption law. At a minimum, this should include, but not be limited to, the following elements to the extent they are not already part of the Company's existing internal controls, compliance code, policies, and procedures:

*Commitment to Compliance*

1.      The Company will ensure that its directors and senior management provide strong, explicit, and visible support and commitment to compliance with its corporate policy against violations of the anti-corruption laws, its compliance policies, and its Code of Conduct, and demonstrate rigorous support for compliance principles via their actions and words.

2.      The Company will ensure that mid-level management throughout its organization reinforce leadership's commitment to compliance policies and principles and encourage employees to abide by them.  The Company will create and foster a culture of ethics and compliance with the law in their day-to-day operations at all levels of the Company.

*Periodic Risk Assessment and Review*

3.      The Company will implement a risk management process to identify, analyze, and address the individual circumstances of the Company, in particular the foreign bribery risks facing the Company.

4.      On the basis of its periodic risk assessment, the Company shall take appropriate steps to design, implement, or modify each element of its compliance program to reduce the risk of violations of the anti-corruption laws, its compliance policies, and its Code of Conduct.

*Policies and Procedures*

5.      The Company will develop and promulgate a clearly articulated and visible corporate policy against violations of the FCPA and other applicable anti-corruption laws (collectively, the "anti-corruption laws,"), which shall be memorialized in a written compliance policy or policies.

6.      The Company will develop and promulgate compliance policies and procedures designed to reduce the prospect of violations of the anti-corruption laws and the Company's compliance policies and Code of Conduct, and the Company will take appropriate measures to encourage and support the observance of ethics and compliance policies and procedures against violation of the anti-corruption laws by personnel at all levels of the Company.  These anti-corruption policies and procedures shall apply to all directors, officers, and employees and, where

C-2

necessary and appropriate, outside parties acting on behalf of the Company in a foreign jurisdiction, including all agents and business partners. The Company shall notify all employees that compliance with the policies and procedures is the duty of individuals at all levels of the company. Such policies and procedures shall address:

     a.    gifts;

     b.    hospitality, entertainment, and expenses;

     c.    customer travel;

     d.    political contributions;

     e.    charitable donations and sponsorships;

     f.    facilitation payments; and

     g.    solicitation and extortion.

7.    The Company will ensure that it has a system of financial and accounting procedures, including a system of internal controls, reasonably designed to ensure the maintenance of fair and accurate books, records, and accounts. This system should be designed to provide reasonable assurances that:

     a.    transactions are executed in accordance with management's general or specific authorization;

     b.    transactions are recorded as necessary to permit preparation of financial statements in conformity with generally accepted accounting principles or any other criteria applicable to such statements, and to maintain accountability for assets;

     c.    access to assets is permitted only in accordance with management's general or specific authorization; and

      d.     the recorded accountability for assets is compared with the existing assets at reasonable intervals and appropriate action is taken with respect to any differences.

8.     The Company shall review its anti-corruption compliance policies and procedures as necessary to address changing and emerging risks and update them as appropriate to ensure their continued effectiveness, taking into account relevant developments in the field and evolving international and industry standards.

### *Independent, Autonomous, and Empowered Oversight*

9.     The Company will assign responsibility to one or more senior corporate executives of the Company for the implementation and oversight of the Company's anti-corruption compliance policies and procedures. Such corporate official(s) shall have the authority to report directly to independent monitoring bodies, including internal audit, the Company's Board of Directors, or any appropriate committee of the Company's Board of Directors, and shall have an adequate level of autonomy from management as well as sufficient resources, authority, and support from senior leadership to maintain such autonomy.

### *Training and Guidance*

10.     The Company will implement mechanisms designed to ensure that its Code of Conduct and anti-corruption compliance policies and procedures are effectively communicated to all directors, officers, employees, and, where necessary and appropriate, agents and business partners. These mechanisms shall include: (a) periodic training for all directors and officers, all employees in positions of leadership or trust, positions that require such training (e.g., internal audit, sales, legal, compliance, finance), or positions that otherwise pose a corruption risk to the Company, and, where necessary and appropriate, agents and business partners; and (b) metrics for

measuring knowledge retention and effectiveness of the training. The Company will conduct training in a manner tailored to the audience's size, sophistication, or subject matter expertise and, where appropriate, will discuss prior compliance incidents.

11.     The Company will maintain, or where necessary establish, an effective system for providing guidance and advice to directors, officers, employees, and, where necessary and appropriate, agents and business partners, on complying with the Company's anti-corruption compliance policies and procedures, including when they need advice on an urgent basis or in any foreign jurisdiction in which the Company operates.

*Confidential Reporting Structure and Investigation of Misconduct*

12.     The Company will maintain, or where necessary establish, an effective system for internal and, where possible, confidential reporting by, and protection of, directors, officers, employees, and, where appropriate, agents and business partners concerning violations of the anti-corruption laws or the Company's Code of Conduct or anti-corruption compliance policies and procedures.

13.     The Company will maintain, or where necessary establish, an effective and reliable process with sufficient resources for responding to, investigating, and documenting allegations of violations of the anti-corruption laws or the Company's anti-corruption compliance policies and procedures.

*Compensation Structures and Consequence Management*

14.     The Company will implement clear mechanisms to incentivize behavior amongst all directors, officers, employees, and, where necessary and appropriate, parties acting on behalf of the Company that comply with its corporate policy against violations of the anti-corruption

C-5

laws, its compliance policies, and its Code of Conduct. These incentives shall include, but shall not be limited to, the implementation of criteria related to compliance in the Company's compensation and bonus system.

15.     The Company will institute appropriate disciplinary procedures to address, among other things, violations of the anti-corruption laws and the Company's Code of Conduct and anti-corruption compliance policies and procedures by the Company's directors, officers, and employees. Such procedures should be applied consistently and fairly, regardless of the position held by, or perceived importance of, the director, officer, or employee. The Company shall implement procedures to ensure that where misconduct is discovered, reasonable steps are taken to remedy the harm resulting from such misconduct, and to ensure that appropriate steps are taken to prevent further similar misconduct, including assessing the internal controls, Code of Conduct, and compliance policies and procedures and making modifications necessary to ensure the overall anti-corruption compliance program is effective.

*Third-Party Management*

16.     The Company will institute appropriate risk-based due diligence and compliance requirements pertaining to the retention and oversight of all agents and business partners, including:

a.     properly documented due diligence pertaining to the hiring and appropriate and regular oversight of agents and business partners;

b.     informing agents and business partners of the Company's commitment to abiding by anti-corruption laws, and of the Company's Code of Conduct and anti-corruption compliance policies and procedures; and

C-6

c. seeking a reciprocal commitment from agents and business partners.

17. The Company will understand and record the business rationale for using a third party in a transaction, and will conduct adequate due diligence with respect to the risks posed by a third-party partner such as a third-party partner's reputations and relationships, if any, with foreign officials. The Company will ensure that contract terms with third parties specifically describe the services to be performed, that the third party is actually performing the described work, and that its compensation is commensurate with the work being provided in that industry and geographical region. The Company will engage in ongoing monitoring and risk management of third-party relationships through updated due diligence, training, audits, and/or annual compliance certifications by the third party.

18. Where necessary and appropriate, the Company will include standard provisions in agreements, contracts, and renewals thereof with all agents and business partners that are reasonably calculated to prevent violations of the anti-corruption laws, which may, depending upon the circumstances, include: (a) anti-corruption representations and undertakings relating to compliance with the anti-corruption laws; (b) rights to conduct audits of the books and records of the agent or business partner to ensure compliance with the foregoing; and (c) rights to terminate an agent or business partner as a result of any breach of the anti-corruption laws, the Company's Code of Conduct or compliance policies, or procedures, or the representations and undertakings related to such matters.

*Mergers and Acquisitions*

19. The Company will develop and implement policies and procedures for mergers and acquisitions requiring that the Company conduct appropriate risk-based due diligence on

potential new business entities, including appropriate FCPA and anti-corruption due diligence by legal, accounting, and compliance personnel.

20.     The Company will ensure that the Company's Code of Conduct and compliance policies and procedures regarding the anti-corruption laws apply as quickly as is practicable to newly acquired businesses or entities merged with the Company and will promptly:

        a.     train the directors, officers, employees, agents, and business partners consistent with Paragraph 10 above on the anti-corruption laws and the Company's compliance policies and procedures regarding anti-corruption laws;

        b.     where warranted, conduct an FCPA-specific audit of all newly acquired or merged businesses as quickly as practicable;

        c.     where warranted, establish a plan to integrate the acquired businesses or entities into the Company's enterprise resource planning systems as quickly as practicable.

*Monitoring and Testing*

22.     The Company will conduct periodic reviews and testing of all elements of its compliance program to evaluate and improve their effectiveness in preventing and detecting violations of anti-corruption laws and the Company's Code of Conduct and anti-corruption compliance policies and procedures, taking into account relevant developments in the field and evolving international and industry standards.

23.     The Company will ensure that compliance and control personnel have sufficient direct or indirect access to relevant sources of data to allow for timely and effective monitoring and/or testing of transactions.

C-8

*Analysis and Remediation of Misconduct*

24.     The Company will conduct a root cause analysis of misconduct, including prior misconduct, to identify any systemic issues and/or any control failures.  The Company will timely and appropriately remediate the root causes of misconduct.  The Company will ensure that root causes, including systemic issues and controls failures, and relevant remediation are shared with management as appropriate.

**ATTACHMENT D**

**COMPLIANCE REPORTING REQUIREMENTS**

SAP SE (the "Company") agrees that it will report to the United States Department of Justice, Criminal Division, Fraud Section (the "Fraud Section") and the United States Attorney's Office for the Eastern District of Virginia (the "Office") periodically. During the Term, the Company shall review, test, and update its compliance program and internal controls, policies, and procedures described in Attachment C.  The Company shall be required to: (i) conduct an initial ("first") review and submit a first report and (ii) conduct and prepare at least two follow-up reviews and reports, as described below.  Prior to conducting each review, the Company shall be required to prepare and submit a workplan for the review.

In conducting the reviews, the Company shall undertake the following activities, among others:   (a) inspection of relevant documents, including the Company's current policies, procedures, and training materials concerning compliance with the FCPA and other applicable anti-corruption laws; (b) inspection and testing of the Company's systems procedures, and internal controls, including record-keeping and internal audit procedures at sample sites; (c) meetings with, and interviews of, relevant current and, where appropriate, former directors, officers, employees, business partners, agents, and other persons; and (d) analyses, studies, and comprehensive testing of the Company's compliance program.  If the Company engages third-party consultants or advisors to assist in conducting reviews consistent with this Agreement, it agrees to make such third-party consultants or advisors available to communicate with the Fraud Section and the Office upon request.

*Written Work Plans, Reviews and Reports*

a.      The Company shall conduct a first review and prepare a first report,

D-1

followed by at least two follow-up reviews and reports.

      b.    Within sixty (60) calendar days of the date this Agreement is executed, the Company shall, after consultation with the Fraud Section and the Office, prepare and submit for review and approval by the Fraud Section and the Office a written work plan to address the Company's first review.  The Fraud Section and the Office shall have thirty (30) calendar days after receipt of the written work plan to provide comments.

      c.    With respect to each follow-up review and report, after consultation with the Fraud Section and the Office, the Company shall prepare and submit for review and approval by the Fraud Section and the Office a written work plan within forty-five (45) calendar days of the submission of the prior report.  The Fraud Section and the Office shall provide comments within thirty (30) calendar days after receipt of the written work plan.

      d.    All written work plans shall identify with reasonable specificity the activities the Company plans to undertake to review and test each element of its compliance program, as described in Attachment C.

      e.    Any disputes between the Company and the Fraud Section and the Office with respect to any written work plan shall be decided by the Fraud Section and the Office in their sole discretion.

      f.    No later than one year from the date this Agreement is executed, the Company shall submit to the Fraud Section and the Office a written report setting forth: (1) a complete description of its remediation efforts to date; (2) a complete description of the testing conducted to evaluate the effectiveness of the compliance program and the results of that testing; and (3) its proposals to ensure that its compliance program is reasonably designed, implemented, and enforced so that the program is effective in deterring and detecting violations of the FCPA and

D-2

other applicable anti-corruption laws. The report shall be transmitted to:

| | |
|---|---|
| Deputy Chief – FCPA Unit | Chief, Financial Crimes and Public Corruption Unit |
| Deputy Chief – CECP Unit | United States Attorney's Office |
| Criminal Division, Fraud Section | Eastern District of Virginia |
| United States Department of Justice | 2100 Jamieson Avenue |
| 1400 New York Avenue NW | Alexandria, VA 22314 |
| Washington, DC 20005 | |

The Company may extend the time period for issuance of the first report with prior written approval of the Fraud Section and the Office.

### *Follow-up Reviews and Reports*

g.      The Company shall undertake at least two follow-up reviews and reports, incorporating the views of the Fraud Section and the Office on the Company's prior reviews and reports, to further monitor and assess whether the Company's compliance program is reasonably designed, implemented, and enforced so that it is effective at deterring and detecting violations of the FCPA and other applicable anti-corruption laws.

h.      The first follow-up ("second") review and report shall be completed by no later than one year after the first report is submitted to the Fraud Section and the Office.

i.      The second follow-up ("third") report shall include a plan for ongoing improvement, testing, and review of the compliance program to ensure the sustainability of the program. The third report shall be completed and delivered to the Fraud Section and the Office no later than thirty (30) days before the end of the Term.

j.      The Company may extend the time period for submission of any of the follow-up reports with prior written approval of the Fraud Section and the Office.

### *Confidentiality of Submissions*

k.      Submissions by the Company, including the work plans and reports will

D-3

likely include proprietary, financial, confidential, and competitive business information. Moreover, public disclosure of the submissions could discourage cooperation, impede pending or potential government investigations and thus undermine the objectives of the reporting requirement. For these reasons, among others, the submissions and the contents thereof are intended to remain and shall remain non-public, except as otherwise agreed to by the parties in writing, or except to the extent the Fraud Section and the Office determines in their sole discretion that disclosure would be in furtherance of the Fraud Section and the Office's discharge of their duties and responsibilities or is otherwise required by law.

**ATTACHMENT E**

**<u>CERTIFICATION</u>**

To:    United States Department of Justice
       Criminal Division, Fraud Section
       Attention: Chief of the Fraud Section

       United States Attorney's Office
       Eastern District of Virginia
       Attention: United States Attorney

Re:    Deferred Prosecution Agreement Disclosure Certification

The undersigned certify, pursuant to Paragraph 24 of the Deferred Prosecution Agreement ("the Agreement") filed on January 10, 2024 in the United States District Court for the Eastern District of Virginia, by and between the United States of America and SAP SE (the "Company"), that undersigned are aware of the Company's disclosure obligations under Paragraph 6 of the Agreement, and that the Company has disclosed to the United States Department of Justice, Criminal Division, Fraud Section (the "Fraud Section"), and the United States Attorney's Office for the Eastern District of Virginia (the "USAO-E.D. Va.") (collectively, the "Offices") any and all evidence or allegations of conduct required pursuant to Paragraph 6 of the Agreement, which includes, but is not limited to, evidence or allegations of any violation of the anti-bribery or accounting provisions of the Foreign Corrupt Practices Act committed by the Company's employees and agents ("Disclosable Information"). This obligation to disclose information extends to any and all Disclosable Information that has been identified through the Company's compliance and controls program, whistleblower channel, internal audit reports, due diligence procedures, investigation process, or other processes. The undersigned further acknowledge and agree that the reporting requirements contained in Paragraph 6 and the representations contained in this certification constitute a significant and important component of the Agreement and of the Offices' determination whether the Company has satisfied its obligations under the Agreement.

E-1

The undersigned hereby certify that they are the Chief Executive Officer and the Chief Financial Officer of SAP SE, respectively, and that each has been duly authorized by the Company to sign this Certification on behalf of the Company.

This Certification shall constitute a material statement and representation by the undersigned and by, on behalf of, and for the benefit of, the Company to the executive branch of the United States for purposes of 18 U.S.C. § 1001, and such material statement and representation shall be deemed to have been made in the Eastern District of Virginia.  This Certification shall also constitute a record, document, or tangible object in connection with a matter within the jurisdiction of a department and agency of the United States for purposes of 18 U.S.C. § 1519, and such record, document, or tangible object shall be deemed to have been made in the Eastern District of Virginia.

Date: _____          Name (Printed): _____

                                     Name (Signed): _____
                                     Chief Executive Officer
                                     SAP SE

Date: _____          Name (Printed): _____

                                     Name (Signed): _____
                                     Chief Financial Officer
                                     SAP SE

**ATTACHMENT F**

**CERTIFICATION**

To:     United States Department of Justice
        Criminal Division, Fraud Section
        Attention: Chief of the Fraud Section

        United States Attorney's Office
        Eastern District of Virginia
        Attention: United States Attorney

Re:     Deferred Prosecution Agreement Compliance Certification

The undersigned certify, pursuant to Paragraph 17 of the Deferred Prosecution Agreement (the "Agreement") filed on January 10, 2024, in the United States District Court for the Eastern District of Virginia, by and between the United States of America and SAP SE (the "Company"), that the undersigned are aware of the Company's compliance obligations under Paragraphs 14 and 15 and Attachment C of the Agreement, and that, based on the undersigned's review and understanding of the Company's anti-corruption compliance program, the Company has implemented an anti-corruption compliance program that meets the requirements set forth in Attachment C to the Agreement. The undersigned certifies that such compliance program is reasonably designed to detect and prevent violations of the Foreign Corrupt Practices Act and other applicable anti-corruption laws throughout the Company's operations. The undersigned further certifies that based on a review of the Company's reports submitted to the Department of Justice, Criminal Division, Fraud Section and the United States Attorney's Office for the Eastern District of Virginia pursuant to Paragraph 16 of the Agreement, the reports were true, accurate, and complete as of the date they were submitted.

The undersigned hereby certify that they are respectively the Chief Executive Officer ("CEO") and the Group Chief Compliance Officer of SAP SE and that each has been duly authorized by the Company to sign this Certification on behalf of the Company.

F-1

This Certification shall constitute a material statement and representation by the undersigned and by, on behalf of, and for the benefit of, the Company to the executive branch of the United States for purposes of 18 U.S.C. § 1001, and such material statement and representation shall be deemed to have been made in the Eastern District of Virginia.  This Certification shall also constitute a record, document, or tangible object in connection with a matter within the jurisdiction of a department and agency of the United States for purposes of 18 U.S.C. § 1519, and such record, document, or tangible object shall be deemed to have been made in the Eastern District of Virginia.

Date: _____     Name (Printed): _____

                                  Name (Signed): _____
                                  Chief Executive Officer
                                  SAP SE

Date: _____     Name (Printed): _____

                                  Name (Signed): _____
                                  Group Chief Compliance Officer
                                  SAP SE

F-2